

KEVIN FELICHKO                          *       IN THE
1 COLLIERY DRIVE
THURMONT, MD 21788                      *       CIRCUIT COURT FOR

      PLAINTIFF,               *       FREDERICK COUNTY

                               *       CASE NO.: C-10-CV-18-000272
V.
                               *
HARRY SCHECHTER
19 GORDON ROAD                          *
NEEDHAM, MA 02492
                               *
AND
                               *
JEREMY MACDONALD
45 CHURCH ST., APT. 1                   *
BOSTON, MA 02116
                               *
AND
                               *
SCHECHTER TECH LLC
D/B/A TEMPALERT LLC                     *
108 LINCOLN STREET
BOSTON, MA 02111                        *

      *SERVE ON RESIDENT AGENT:*   *
      HARRY SCHECHTER
      108 LINCOLN STREET          *
      BOSTON, MA 02111
                               *
AND
                               *
DIGI INTERNATIONAL INC.
11001 BREN RD E                         *
MINNETONKA, MN 55343
                               *
      *SERVE ON RESIDENT AGENT:*   *
      JOSEPH T. DUNSMORE
      11001 BREN RD E             *
      MINNETONKA, MN 55343
                               *
      DEFENDANTS.               *

*   *   *   *   *   *   *   *   *   *   *   *   *   *

## VERIFIED COMPLAINT

Plaintiff Kevin Felichko, by his attorneys, sues Defendants Harry Schechter, Jeremy MacDonald, Schechter Tech LLC d/b/a TempAlert LLC (the "Company"), and Digi International Inc. ("Digi") and states as follows:

### INTRODUCTION

1.    Mr. Felichko worked for years as the critical software engineer for the Company, controlled by defendants Mr. Schechter and Mr. MacDonald, without pay. Instead, Mr. Felichko received stock options in the Company that Mr. Schechter promised him represented ten percent ownership in the Company. Mr. Felichko personally developed and patented the intellectual property that was the Company's most valuable asset. In 2017, Mr. Schechter and Mr. MacDonald orchestrated the sale of the Company to Defendant Digi for $45,000,000.00 in cash and potentially $75,000,000.00 or more in earnout money. Mr. Schechter and Mr. MacDonald became multi-millionaires overnight. Mr. Felichko received nothing.

### PARTIES

2.    Plaintiff Kevin Felichko is an adult individual who resides in Frederick County, Maryland.

3.    Defendant Harry Schechter is an adult individual who resides in Massachusetts. At all relevant times, Mr. Schechter purposefully made the statements recounted herein to Mr. Felichko while Mr. Felichko was in Maryland. The injuries complained of were inflicted by Mr. Schechter upon Mr. Felichko in Maryland.

4.    Defendant Jeremy MacDonald is an adult individual who resides in Massachusetts. At all relevant times, Mr. MacDonald conspired with Mr. Schechter to perform

2

the fraudulent acts complained of herein, knowing that the fraudulent acts would injure Mr. Felichko in Maryland.

5. Defendant Schechter Tech LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located in Boston, Massachusetts. At all relevant times, Schechter Tech LLC negotiated the contracts discussed herein with Mr. Felichko while Mr. Felichko was in Maryland, the same were performed by Mr. Felichko while he was a Maryland resident and the injuries complained of herein were inflicted upon Mr. Felichko in Maryland. Upon information and belief, at all times relevant hereto, Schechter Tech LLC regularly transacted business and sold products in Maryland, including with respect to the Intellectual Property and the Patents (as defined herein).

6. Defendant Digi International Inc. is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in Minnetonka, Minnesota. Upon information and belief, Digi regularly transacts business and sells products in Maryland, including with respect to the Intellectual Property and the Patents (as defined herein). The causes of action raised in the Complaint injured Mr. Felichko in Maryland.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-103(b) and applicable Maryland common law regarding jurisdiction.

8. Venue is proper in this Court pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-201(b).

## BACKGROUND

9. Digi is a leading international technology company that markets products tailored for the "Internet of Things." The Internet of Things is a rapidly growing area of information

technology that focuses on optimizing the performance of equipment and machinery by allowing them to convey, and act upon, critical information over the internet, without the need for direct human supervision.

10.     The Company specialized in applications of the Internet of Things to products that monitor temperatures in real time, for applications as diverse as preservation of medication safety and quality control for fast food.

11.     Mr. Felichko personally developed, almost exclusively in Maryland, the most important technologies that the Company used. Digi paid tens of millions of dollars to acquire the Company primarily to acquire the information technology that Mr. Felichko created and serviced for the Company in Maryland.

12.     Other than petty and spotty reimbursements over time, Mr. Felichko was never paid a salary, a dividend, a bonus or any other form of compensation for his work for the Company. He received no monetary compensation at all after 2007. Instead, he was offered and accepted ownership option rights in the Company that allowed him the right to purchase ten percent of the Company. He worked for the Company for years, from Maryland, based on the understanding that he would be entitled to purchase a ten percent ownership stake at a discounted price.

13.     Mr. Schechter, however, carefully manipulated the Company's inner workings, in concert with Mr. MacDonald, to ensure that Mr. Felichko never received the compensation he earned and was specifically promised. He deliberately issued millions of shares of the Company to himself and to Mr. MacDonald for essentially no consideration, in order to reduce Mr. Felichko's potential stake in the Company from ten percent to less than one percent.

4

14.    For example, Mr. MacDonald was given millions of shares in the Company (outright ownership shares, not options to purchase shares) in exchange for a promissory note whereby he claimed to be obligated to pay money to the Company in five years or upon sale of the Company.  He and Mr. Schechter then sold the Company to Digi for tens of millions of dollars in cash, at which point, upon information and belief, Mr. MacDonald used a fraction of the millions he received to meet his illusory obligations under the "loan" he made to the Company.  In effect, Mr. MacDonald received ownership of the Company for no consideration at all.

15.    Even this, however, was not enough for Mr. Schechter.  He further frustrated Mr. Felichko's ability to receive just compensation by outright lying to him on numerous occasions. For example, he told Mr. Felichko, by telephone call to Mr. Felichko in Maryland, on October 21, 2017 that the Company was being sold at a "fire sale", and that as a result the "options were underwater" and the "co-founders" (meaning Mr. Felichko and Mr. Schechter) would receive nothing.   A few days later, Mr. Schechter changed his story, and stated instead that the "attorneys" had "cancelled" the options.  In fact, co-founder Mr. Schechter would receive millions of dollars from what he falsely called a "fire sale", as would non-founder Mr. MacDonald, but Mr. Felichko would receive nothing.

16.    At all times relevant hereto, Mr. Schechter, who purported to manage the Company's Unit Option Plan, acted with the purpose of thwarting Mr. Felichko's ability to receive any compensation for the immense value Mr. Felichko provided over several years to the Company.

### FACTS COMMON TO ALL COUNTS

17.     Mr. Felichko originally began working with Mr. Schechter in 2002 as a part-time contracted software engineer on a project originally called "Temperature Bug." He had unrelated employment at all relevant times.     Temperature Bug later became called "Temperature@lert" and thereafter an asset of the Company. Substantially all of the work that Mr. Felichko did for Mr. Schechter and the Company was done in Maryland.

18.     By 2005, Mr. Felichko performed work for both Temperature@lert and for another project associated with Mr. Schechter called AnyBill from Maryland. He also provided technical support for those projects from Maryland. Mr. Felichko's compensation was paid by AnyBill. From this time until mid-2007, he received a total of approximately $6,000.00 in compensation from Mr. Schechter and his companies.

19.     Mr. Schechter left AnyBill in 2007. Thereafter, Mr. Felichko continued to work on projects for Temperature@lert. On May 26, 2007, Mr. Schechter proposed to Mr. Felichko, by telephone call placed to Maryland, that Mr. Felichko could work going forward on projects for Temperature@lert under one of two compensation models.

20.     The first compensation model was that Mr. Felichko would continue working in the same manner and receiving occasional cash payments from Mr. Schechter as funds were available.

21.     The second compensation model was that Mr. Felichko would receive a long term equity interest going forward in exchange for continuing to work for Temperature@lert.

22.     Mr. Felichko decided that he preferred to work for a long term ownership interest in the Company.    Mr. Schechter agreed, and promised that he would provide appropriate documentation for this agreement.

6

23.    No agreement was provided to Mr. Felichko for more than a year. In good faith reliance on Mr. Schechter's promises, Mr. Felichko continued to perform work, without any compensation, for Temperature@lert. Mr. Felichko performed nearly all of this work while in Maryland.

24.    In 2008, Temperature@lert's core technology, "Offsite Alert" was underperforming because it was prohibitively expensive to operate in real world conditions. In response, on August 7, 2008, Mr. Felichko took time off from his other employment to work around the clock to attempt to resolve this issue.

25.    Over the course of three days, Mr. Felichko created an entirely new product called "Sensor Cloud" that was vastly more efficient, and thus much more valuable, than Offsite Alert. Sensor Cloud and related technologies developed by Mr. Felichko (the "Intellectual Property") eventually resulted in several patents initially issued to Mr. Felichko and Mr. Schechter, as reflected on **Exhibit A** attached hereto and incorporated herein by reference (the "Patents"). The Intellectual Property and the Patents were the Company's most valuable assets.

26.    The Company later attempted to assign the Patents; however the purported assignments were without any consideration given to Mr. Felichko in return for the assignments of his interest therein.

27.    In October, 2008, Mr. Felichko still had not received the documentation that Mr. Schechter promised Mr. Felichko, confirming Mr. Felichko's ownership interests in the Company. Mr. Schechter contacted him on October 8, 2008, by email sent to Maryland, to request updates on several projects Mr. Felichko was developing for the Company. Mr. Felichko responded on October 10, 2008, by email sent from Maryland, with the requested updates and

7

also inquired as to the status of the paperwork that would memorialize his equity interests in the Company.

28.     Mr. Schechter responded, by email sent to Maryland, by blaming "the lawyers" for taking too long on the documentation. He reiterated his desire to make Mr. Felichko's "10% ownership official." In addition, he promised that "[w]e will need to talk about cash and add'l incentives for you [Mr. Felichko] as the company grows." Mr. Felichko never received any cash or additional incentives.

29.     Instead, Mr. Felichko received and signed, in Maryland, a document called "Schechter Tech LLC 2007 Unit Option Plan Unit Option Agreement" (the "Option Agreement"). Despite the "2007" title, the Option Agreement was not provided to Mr. Felichko until the fall of 2008, and, according to Mr. Schechter's emails to Mr. Felichko, apparently had not been prepared as of October 10, 2008. The Option Agreement's first page recites a 2008, not 2007, date. A copy of the Option Agreement is attached hereto as **Exhibit B** and incorporated herein by reference.

30.     The Option Agreement was signed by Mr. Felichko in Maryland, and by Mr. Schechter as CEO of the Company.

31.     Pursuant to the Option Agreement, Mr. Felichko had an option to buy up to 1,000,000 units of the Company at the price of $0.0125 each (his "Options").

32.     According to Mr. Schechter's representations to Mr. Felichko in Maryland, 1,000,000 units of the Company constituted ten percent of the total units of the Company; thus, there existed 10,000,000 units in the Company.

33.     Under section 4 of the Option Agreement, 100% of Mr. Felichko's options vested on the "Measurement Date", which, by the terms of the Option Agreement was November 1, 2008.

34.     The Option Agreement incorporates by reference the "Company's 2008 Unit Option Plan (as the same may be amended from time to time, the "Plan")."

35.     The Company refused and continues to refuse to provide all versions of the Plan to Mr. Felichko. He was provided a "Schechter Tech LLC 2007 Unit Option Plan" that described itself in Article I as the "2008 Unit Purchase Option Plan" but otherwise did not contain an execution date or any signatures. A copy of this "2007 Option Plan" is attached hereto as **Exhibit C** and incorporated herein by reference.

36.     Upon information and belief, Mr. Schechter from time to time amended the 2007 Option Plan without any notice to Mr. Felichko and solely to benefit himself and Mr. MacDonald. Mr. Schechter has refused to provide Mr. Felichko with all amendments to the Option Plan in order, upon information and belief, to prevent Mr. Felichko from exercising his rights thereunder and otherwise receiving fair and just compensation.

37.     According to the 2007 Option Plan, there were to be no more than 1,800,000 unit options. Given that Mr. Felichko's 1,000,000 unit options reflected 10% of the Company's units, another 800,000 units remained in the option pool and Mr. Schechter owned 8,200,000 outright as the Company's sole member, for a total of 10,000,000 units of ownership of the Company.

38.     In 2012, Mr. Felichko and Mr. Schechter discussed the possibility of Mr. Felichko joining the Company on a full time paid basis. Mr. Felichko indicated in an email, sent from

Maryland, that he currently owned ten percent of the Company and that he would take a salary cut to join the Company in exchange for "bonuses or additional equity" in the Company.

39.    Mr. Schechter did not dispute during this exchange that Mr. Felichko owned ten percent of the Company.  Nothing came of these discussions and Mr. Felichko continued to perform work for the Company with no additional pay, given his understanding that he owned one tenth of the Company.

40.    Later, however, and unbeknownst to Mr. Felichko, Mr. Schechter asserted ownership in 82,000,000 units of the Company, meaning that his ownership share increased by a factor of ten without any notice to Mr. Felichko or corresponding increase in Mr. Felichko's unit options.

41.    Upon information and belief, Mr. Schechter simply awarded himself 73,800,000 additional units of the Company in exchange for no consideration and without providing any increase to the holders of unit options like Mr. Felichko or any other value to them.  As a result, Mr. Felichko's purported ten percent ownership of the Company was now worth far less.  This transaction was concealed from Mr. Felichko.

42.    In another transaction concealed from Mr. Felichko, Mr. MacDonald was given tens of millions of units in the Company in exchange for effectively no consideration.  Between this gift to Mr. MacDonald and Mr. Schechter's grant of more than 73,000,000 units to himself, the 1,000,000 unit options that Mr. Felichko accepted because he was told they reflected "10% ownership" instead appeared to constitute less than one percent of the Company's units.  Upon Information and belief, Mr. Schechter and Mr. MacDonald agreed and intended that the purpose of this transaction was to enrich themselves at the expense of Mr. Felichko and otherwise to prevent him from receiving fair and just compensation.

43.    Mr. Felichko, having no knowledge that Mr. Schechter and Mr. MacDonald acted to destroy the value of Mr. Felichko's options, continued to work, from Maryland, to perfect the Company's products and Intellectual Property. In fact, until 2016, Mr. Felichko worked, from Maryland, in what amounted at times to a full-time job, to refine and support Sensor Cloud, but received no compensation. Indeed, Mr. Felichko worked at all hours of the day, and often every day of the week (including weekends), to refine and support Sensor Cloud.

44.    In May, 2016, Mr. Schechter called Mr. Felichko out of the blue and made an oral offer to "buy back" Mr. Felichko's options for $200,000. Mr. Felichko consulted with a financial advisor and responded to the offer by emailing Mr. Schechter a series of questions, including a question as to the valuation of the Company.

45.    Mr. Schechter responded on May 10, 2016 with an email to Mr. Felichko in Maryland that stated:

> Yes, a valuation was done that put the company value at about $2M. This was about a year ago. For the year it was valued, we had about $250k of profit (2014). The company lost $300k in 2015. A new valuation has not been performed yet.

46.    Upon information and belief, this was false and Mr. Schechter made this false representation to Mr. Felichko to defraud him by inducing him to give up his Options for much less than their actual value and otherwise to interfere with Mr. Felichko's ability to receive fair compensation for the value he provided to the Company.

47.    Given that Mr. Schechter offered approximately $200,000 to purchase unit options in a business he asserted was worth $2,000,000, Mr. Schechter recognized and intended to convey to Mr. Felichko that Mr. Felichko's Options still represented a ten percent ownership share in the Company.

11

48.     Mr. Felichko declined to sell back his Options.  On November 3, 2016, Mr. Schechter called Mr. Felichko to tell him that Mr. Schechter was "ending his [Mr. Felichko's] association with" the Company.  According to Mr. Schechter, this was a mere formality needed to clear up some of the Company's records.  He then emailed Mr. Felichko a substantially similar message, writing, in pertinent part:

Kevin,

> The checklist system didn't work out and you haven't written any significant amount of code in quite a while.  I am writing to end your association with TemperatureAlert.

49.     Mr. Schechter did not provide any indication in these communications that there was any change to Mr. Felichko's Options.  Mr. Felichko retained access to and use of his Company email account.  Mr. Schechter did not provide notice to Mr. Felichko of any exercisability of his Options at this time (or ever).

50.     In March 2017, having heard nothing from Mr. Schechter for months, Mr. Felichko emailed him, from his Company email address, to schedule an update call.  They set a call time, but Mr. Schechter never answered the phone and thereafter ignored Mr. Felichko.

51.     On October 21, 2017, Mr. Schechter announced "exciting company news" to all holders of Temperature@lert email addresses.  Mr. Felichko replied by email, from his Company email address, asking for more information.

52.     Mr. Felichko and Mr. Schechter talked on the phone around 4 p.m. that afternoon and Mr. Schechter falsely told Mr. Felichko, who was in Maryland at the time, that the Company was being sold in a fire sale that would provide no return to the Company's co-founders.

12

53.     Upon information and belief, Mr. Schechter made this false statement to Mr. Felichko in an effort to defraud Mr. Felichko out of receiving just value for his contributions to the Company and his Options therein.

54.     On October 23, 2017, Mr. Felichko emailed Mr. Schechter from his Temperature@lert email address to request a follow up call. Mr. Schechter requested that the call be held on October 24. Later on October 23, Mr. Felichko's access to his Temperature@lert email address was terminated. Mr. Felichko then followed up with Mr. Schechter using his personal email address, to confirm their October 24 call.

55.     The two of them talked on October 24, 2017. Mr. Schechter falsely told Mr. Felichko, who was in Maryland at the time, that all unit options were "wiped out" in November 2016 because they were "underwater." He continued by falsely telling Mr. Felichko that the Company thereafter had received outside investment and only those outside investors received any payment.

56.     Upon information and belief, Mr. Schechter made these false statements in order to defraud Mr. Felichko and to interfere with his ability to obtain fair consideration for his Options and the work he performed for the Company.

57.     Digi, the Company, Mr. Schechter, Mr. MacDonald and Schechter Tech HoldCo, LLC (a newly formed company created to facilitate this transaction) ("HoldCo") entered into an Equity Purchase Agreement dated as of October 20, 2017, which was made public record by virtue of Digi's reporting requirements to the Securities and Exchange Commission (the "Purchase Agreement"). Under the Purchase Agreement, Mr. Schechter and Mr. MacDonald, who are identified as the only two owners of the Company, were to receive a $45,000,000 cash payment to HoldCo (subject to some adjustments), together with earnout payments for 2018 and

13

2019 in the maximum amount of $75,000,000. Upon information and belief, Mr. Schechter and Mr. MacDonald agreed to structure the sale transaction in this specific manner in order to, among other things, ensure that they received all the benefit thereof while Mr. Felichko received no compensation or payout from the sale whatsoever.

58.     Upon information and belief, the Company, Mr. MacDonald and Mr. Schechter made false representations to Digi regarding Mr. Felichko's Options and role in the Company and his rights to the Patents, during negotiations for the Purchase Agreement, in the Purchase Agreement itself, and in connection with post-execution obligations with respect to the Purchase Agreement, with the improper purpose of preventing Mr. Felichko from receiving any remuneration in connection with the Purchase Agreement, his Options, and other legal and equitable obligations owed by the Company to him.

59.     Despite the complexity of this transaction, the outcome is simple. For the sale of the Company (whose most valuable assets, including the Patents were created primarily by Mr. Felichko in Maryland), Mr. Schechter and Mr. MacDonald will, between the two of them, receive anywhere from approximately $45,000,000 to approximately $120,000,000. Mr. Felichko will receive nothing, absent relief in this case.

60.     If Mr. Felichko were in fact a ten percent owner of the Company as he had been promised, he would instead receive at least approximately $4,500,000.

61.     As a result of the sale, Digi received the benefit of all of Mr. Felichko's unpaid work for the Company performed in Maryland, including the Intellectual Property and Patents that he developed.

62.     Pursuant to the terms of his Option Agreement, after he learned about the sale to Digi, Mr. Felichko formally exercised his vested options to one million units of the Company by

delivering the purchase price and a signed Option Exercise Form from Maryland to the Company. A copy of Mr. Felichko's Option Exercise Form is attached hereto as **Exhibit D** and incorporated herein by reference.

63.     Mr. Schechter signed for and thus accepted delivery of the Option Exercise Form on November 2, 2017. Later that day, Mr. Felichko spoke with Mr. Schechter about the Option Exercise Form.   During this conversation, Mr. Schechter said that all options had been "cancelled" by "the attorneys" because they were "not exercisable" and that even if the options were exercisable, there would not be "much left to award after adjustments" upon closing. Upon information and belief, all or nearly all of this information was substantially false and Mr. Schechter said it for the purpose of fraudulently preventing Mr. Felichko from receiving compensation for his Options.

64.     While making these representations to Mr. Felichko, Mr. Schechter stated that he had consulted with "Jeremey" [MacDonald] about the same and that they were inclined to offer $213,000 to Mr. Felichko to "make it right".   Upon information and belief, Mr. Schechter and Mr. MacDonald made this offer for the purpose of fraudulently preventing Mr. Felichko from receiving compensation for his Options.   The offer was conveyed by Mr. Schechter after consulting with and obtaining consent from Mr. MacDonald.

65.     The Option Exercise Form was not honored and to date Mr. Felichko has received no compensation for the same or for the Intellectual Property he developed.

## COUNT I
### (UNJUST ENRICHMENT – UNIT OPTIONS)

66.     Mr. Felichko incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

67.     Mr. Felichko, by his years of unpaid software engineering and other valuable services to the Company, conveyed substantial benefits upon the Defendants by, among other things, contributing greatly to the value of the Company's intellectual property and therefore to the value of ownership of the Company.

68.     The Defendants are aware of this substantial benefit conveyed to them by Mr. Felichko.

69.     The Defendants have retained the substantial benefit conveyed upon them by Mr. Felichko, including the tens of millions of dollars received by Mr. Schechter and Mr. MacDonald for their purported ownership of the Company and the valuable Intellectual Property retained by Digi.

70.     It is unjust that the Defendants retain the benefits conveyed upon them by Mr. Felichko without providing any value in exchange to him, given that he worked unpaid for years under the promise that he would receive ten percent of the Company.

WHEREFORE, Plaintiff Kevin Felichko respectfully requests that the Court:

    A.  Enter judgment in Mr. Felichko's favor and against the Defendants, jointly and severally in an amount to exceed $4,000,000;

    B.  Award Mr. Felichko his costs and fees, including attorneys' fees, incurred in bringing this action; and

    C.  Grant such other relief as is just and appropriate under the circumstances.

### COUNT II
#### (UNJUST ENRICHMENT – INTELLECTUAL PROPERTY)

71.     Mr. Felichko incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

72.     Mr. Felichko, by purportedly assigning his interest in the Patents to the Company, conveyed benefits to the Defendants.

73.     The Defendants are aware of this benefit conveyed to them by Mr. Felichko.

74.     The Defendants have retained the substantial benefit conveyed upon them by Mr. Felichko, including the tens of millions of dollars paid by Digi to Mr. Schechter and Mr. MacDonald to acquire the Patents through their purported ownership of the Company and the value of the Patents to Digi.

75.     It is unjust that the Defendants retain the benefits conveyed upon them by Mr. Felichko by virtue of his assignment of the valuable Patent interests, particularly because he received no consideration for such assignment.

WHEREFORE, Plaintiff Kevin Felichko respectfully requests that the Court:

   A.   Enter judgment in Mr. Felichko's favor and against the Defendants, jointly and severally in an amount to exceed $4,000,000;

   B.   Award Mr. Felichko his costs and fees, including attorneys' fees, incurred in bringing this action; and

   C.   Grant such other relief as is just and appropriate under the circumstances.

## COUNT III
### (BREACH OF CONTRACT - COVENANTS OF GOOD FAITH AND FAIR DEALING- THE COMPANY AND HARRY SCHECHTER)

76.     Mr. Felichko incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

77.     The Company owed Mr. Felichko a duty of good faith and fair dealing in connection with the Options Agreements and Mr. Felichko's options.

78.    Mr. Schechter, in his capacities as manager of the Company and of the Option Plan, owed Mr. Felichko a duty of good faith and fair dealing in connection with the Options Agreements and Mr. Felichko's options.

79.    The Company and Mr. Schechter breached their duties to Mr. Felichko by, among other things, intentionally issuing units in the Company to Mr. Schechter and Mr. MacDonald in order to undermine the value of Mr. Felichko's options while simultaneously enriching Mr. Schechter and Mr. MacDonald.

80.    The Company and Mr. Schechter also breached their duties to Mr. Felichko by purporting to terminate Mr. Felichko's "association" with Schechter Tech before he ever had an opportunity to exercise his stock options. They did this explicitly to prevent him from performing under the Agreements, exercising his stock options and receiving any consideration or value under the Agreements. Under the Option Agreement, Mr. Felichko could exercise his Options in the event of written notice of exercisability or upon sale of the Company. He never received such written notice and his attempted exercise upon the sale was ignored.

81.    The Company and Mr. Schechter further breached their duties to Mr. Felichko by lying to him about the status of the Company and the Options, including by telling him they were "underwater" and unable to be exercised, and by concealing from him amendments to the 2007 Option Plan that were made to benefit Mr. MacDonald and Mr. Schechter at Mr. Felichko's expense.

82.    Mr. Felichko was harmed by Mr. Schechter and the Company's breaches and the lost opportunity to receive a ten percent ownership share of the Company that would have been worth millions of dollars.

WHEREFORE, plaintiff Kevin Felichko respectfully requests that the Court:

A. Enter judgment in Mr. Felichko's favor and against Defendants Harry Schechter and Schechter Tech, LLC, jointly and severally in an amount to exceed $4,000,000;

B. Award Mr. Felichko his costs and fees, including attorneys' fees, incurred in bringing this action; and

C. Grant such other relief as is just and appropriate under the circumstances.

## COUNT IV
### (BREACH OF CONTRACT – STOCK OPTIONS – THE COMPANY)

83. Mr. Felichko incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

84. Mr. Felichko validly exercised his Options upon the sale of the Company by tendering to the Company, through Mr. Schechter, his Option Exercise Form and the appropriate purchase price funds.

85. Mr. Schechter and the Company breached the contracts with Mr. Felichko by refusing to acknowledge Mr. Felichko's valid exercise of his Options and thereafter by failing to issue to him the Units to which he was entitled or other consideration for the same.

86. These breaches by Mr. Schechter and the Company damaged Mr. Felichko by preventing him from receiving any value for his properly exercised Options.

WHEREFORE, plaintiff Kevin Felichko respectfully requests that the Court:

A. Enter judgment in Mr. Felichko's favor and against the Defendants, jointly and severally in an amount to exceed $4,000,000;

B.   Award Mr. Felichko his costs and fees, including attorneys' fees, incurred in

bringing this action; and

C.   Grant such other relief as is appropriate.

## COUNT V
### (DECLARATORY JUDGMENT – OWNERSHIP OF PATENTS)

87.    Mr. Felichko incorporates by reference the allegations in the preceding
paragraphs as if fully set forth herein.

88.    Any purported assignment by Mr. Felichko of his interest in the valuable
Intellectual Property he developed, including but not limited to the Patents, was made without
consideration and thus is void and/or unenforceable. Mr. Felichko received no compensation for
any such assignment.

89.    As a result, Mr. Felichko retains his ownership interest in the valuable Intellectual
Property, including the Patents, that he developed.

90.    Defendants therefore do not own Mr. Felichko's interest in the valuable
intellectual property, including the Patents, and must compensate Mr. Felichko for using the
same.

91.    An actual controversy and justiciable issue regarding the contracts between the
parties within this Court's jurisdiction exists between Mr. Felichko and Defendants as to their
respective rights and shares of ownership in the intellectual property, including the Patents,
developed by Mr. Felichko, and as to what remuneration Mr. Felichko is owed by virtue of the
Defendants' use of and retention of benefits from the Patents.

92.    This Court can determine the rights at issue the controversy by issuing a
declaratory judgment.

WHEREFORE, plaintiff Kevin Felichko respectfully requests:

A. That the Court determine and adjudicate the rights and liabilities of the parties with respect to each parties' interest, if any, in the valuable Intellectual Property, including the Patents, developed by Mr. Felichko, and each parties' right, if any, to compensation with respect to the same;

B. That the Court find and declare that Mr. Felichko retains his ownership interest in the valuable Intellectual Property, including the Patents, including because he received no consideration for his purported assignment thereof, and that Defendants are obligated to pay him appropriate compensation for their use of and benefit derived from the same;

C. That the Court award to Mr. Felichko attorneys' fees and the costs of these proceedings; and

D. That the Court grant such other and further relief as may be just and appropriate under the circumstances.

## COUNT VI
### (DECLARATORY JUDGMENT – OWNERSHIP OF UNITS)

93.    Mr. Felichko incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

94.    Any purported expiration or forfeiture of Mr. Felichko's Options was done without consideration and/or by a breach of the contracts between the parties.

95.    As a result, Mr. Felichko retained his right to exercise his Options and to purchase, at the price provided therein, the ten percent ownership of the Company he was promised.

21

96.     Mr. Felichko properly exercised his right to the Options.

97.     Defendants therefore do not own Mr. Felichko's interest in the Company.

98.     An actual controversy and justiciable issue regarding the contracts between the parties within this Court's jurisdiction exists between Mr. Felichko and Defendants as to their respective rights and shares of ownership in the Company, or alternatively the right to payment with respect to the same according to the terms of the Digi Transaction.

99.     This Court can determine the rights at issue and resolve the controversy by issuing a declaratory judgment.

WHEREFORE, plaintiff Kevin Felichko respectfully requests:

A.  That the Court determine and adjudicate the rights and liabilities of the parties with respect to each parties' interest, if any, in the ownership of the Company, and each parties' right, if any, to compensation with respect to the same;

B.  That the Court find and declare that Mr. Felichko remains retains his ownership interest in the ten percent of the Company or that he is entitled to proportionate compensation for the same according to the terms of the Purchase Agreement and related contracts;

C.  That the Court award to Mr. Felichko attorneys' fees and the costs of these proceedings; and

D.  That the Court grant such other and further relief as may be just and appropriate under the circumstances.

**COUNT VII**
(CONSTRUCTIVE FRAUD)

22

100.   Mr. Felichko incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

101.   The Company and Mr. Schechter, as Manager of the Company and of its option plan, owed legal and equitable duties, including fiduciary duties to option holders, such as Mr. Felichko.

102.   The Company's and Mr. Schechter's duties included, among other things, duties to preserve the value of the options and to refrain from self-dealing to enrich Mr. Schechter at the expenses of option holders, including Mr. Felichko.

103.   The Company and Mr. Schechter breached these duties by, among other things, destroying the value of the options by issuing ownership without meaningful consideration to Mr. Schechter and Mr. MacDonald, by unilaterally amending the Company's governing documents to benefit Mr. Schechter and Mr. MacDonald, and by otherwise failing to act to preserve the value of options in the Company.

104.   The Company and Mr. Schechter took these actions in secret, in order to conceal them from option holders and otherwise to deceive option holders. In so doing, they breached the confidence that option holders reasonably placed in the Company and in Mr. Schechter as Manager of the Company and of its Option Plan. These actions further violated the public's interest in transparent and honest administration of options plans, which are a common form of compensation in emerging companies and markets, and which depend substantially on the integrity of management.

105.   The Company's and Mr. Schechter's violations amount to constructive fraud, and injured Mr. Felichko by preventing him from receiving just compensation for his years of work on behalf of the Company.

23

WHEREFORE, plaintiff Kevin Schechter respectfully requests that the Court:

A. Enter judgment in Mr. Felichko's favor and against Mr. Schechter and the Company, jointly and severally, in an amount to exceed $4,000,000, together with punitive damages in the amount of $10,000,000;

B. Award Mr. Felichko his costs and fees, including attorneys' fees, incurred in bringing this action; and

C. Grant such other relief as is just and appropriate under the circumstances.

## COUNT VIII
### (FRAUD)

106. Mr. Felichko incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

107. In 2016, Mr. Schechter intentionally made false representations about the value of the Company to Mr. Felichko, including that it was worth only approximately two million dollars, when in fact at that time it already possessed the Intellectual Property, including the Patents, that Digi not much later would pay more than $45,000,000 in cash to acquire.

108. Mr. Schechter made this false representation to Mr. Felichko in order to prevent Mr. Felichko from exercising his option to obtain ten percent ownership of the real value of the Company.

109. Mr. Felichko relied on Mr. Schechter's false representations and did not exercise his option to obtain ten percent ownership of the Company at that time.

110. Mr. Felichko was damaged by these false representations because he was deprived of the benefit he would have obtained had he exercised his option to purchase ten percent of the Company.

24

WHEREFORE, plaintiff Kevin Felichko respectfully requests that the Court:

    A. Enter judgment in Mr. Felichko's favor and against the Defendants, jointly and severally in an amount to exceed $4,000,000, together with punitive damages in the amount of $10,000,000;

    B. Award Mr. Felichko his costs fees, including attorneys' fees, incurred in bringing this action; and

    C. Grant such other relief as is just and appropriate under the circumstances.

## COUNT IX
### (NEGLIGENT MISREPRESENTATION)

111.   Mr. Felichko incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

112.   In 2016, Mr. Schechter negligently made false representations about the value of the Company to Mr. Felichko, including that it was worth only approximately two million dollars, when in fact at that time it already possessed the Intellectual Property, including the Patents, that Digi later would pay more than $45,000,000 in cash to acquire.

113.   Mr. Felichko relied on Mr. Schechter's false representations and did not exercise his option to obtain ten percent ownership of the Company at that time.

114.   Mr. Felichko was damaged by these false representations because he was deprived of the benefit he would have obtained had he exercised his option to purchase ten percent of the Company.

WHEREFORE, plaintiff Kevin Schechter respectfully requests that the Court:

    A. Enter judgment in Mr. Felichko's favor and against Mr. Schechter in an amount to exceed $4,000,000.00;

B.  Award Mr. Felichko his costs and fees, including attorneys' fees, incurred in bringing this action; and

C.  Grant such other relief as is just and appropriate under the circumstances.

## COUNT X
### (INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

115.   Mr. Felichko incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

116.   Upon information and belief, in connection with the negotiation, execution and performance of the Purchase Agreement, Mr. Schechter, Mr. MacDonald and the Company made numerous false representations to Digi with respect to Mr. Felichko's options and other legal and equitable duties owed to Mr. Felichko by the Company, including their obligations to provide him consideration for the work he performed and Intellectual Property he created.

117.   Further upon information and belief, Mr. Schechter, Mr. MacDonald and the Company made these representations, without justification, in order to conceal from Digi, Mr. Felichko's rights and the obligations owed to him by the Company, so that Digi would enter into the Purchase Agreement, which was drafted to ensure that only Mr. Schechter and Mr. MacDonald, not Mr. Felichko, received consideration from Digi in that transaction, and thus to interfere wrongly with Mr. Felichko's lawful right to receive compensation in connection with the same.

118.   These representations therefore interfered with the consideration, including value for his Options, that Mr. Felichko otherwise was entitled to receive in connection with the purchase made by Digi, and accordingly harmed Mr. Felichko.

WHEREFORE, plaintiff Kevin Schechter respectfully requests that the Court:

A. Enter judgment in Mr. Felichko's favor and against Mr. Schechter, Mr. MacDonald, and the Company in an amount to exceed $4,000,000, together with punitive damages in the amount of $10,000,000;

B. Award Mr. Felichko his costs and fees, including attorneys' fees, incurred in bringing this action; and

C. Grant such other relief as is just and appropriate under the circumstances.

## COUNT XI
### (BAD FAITH TERMINATION)

119. Mr. Felichko incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

120. Mr. Schechter and the Company purported to "terminate" Mr. Felichko's "association" with the Company in violation of their duties to him of good faith and fair dealing.

121. The sole purpose of the asserted termination was to use the superior bargaining power possessed by the Company and Mr. Schechter to deprive Mr. Felichko of the ten percent ownership of the Company that he was owed based on his past service to the Company.

122. Mr. Felichko was damaged by this bad faith termination because he was prevented from receiving his promised compensation for his substantial work done over many years on the Company's behalf.

WHEREFORE, plaintiff Kevin Felichko respectfully requests that the Court:

A. Enter judgment in Mr. Felichko's favor and against Mr. Schechter and the Company in an amount to exceed $4,000,000, together with punitive damages in the amount of $10,000,000;

27

B. Award Mr. Felichko his costs and attorneys' fees incurred in bringing this action; and

C. Grant such other relief as is just and appropriate under the circumstances.

## COUNT XII
(INJUNCTION)

123. Mr. Felichko incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

124. Absent an injunction, Mr. Felichko has and will continue to suffer irreparable harm to his business because he will be unable to market the Intellectual Property and Patents that belong to him, and thus will be unable to develop a client base for the same, which instead may unjustly use Digi's products, instead.

125. Money damages are inadequate because, among other things, it is not possible to estimate the total loss to Mr. Felichko if he is unable to continue to market and develop the Intellectual Property and the Patents.

126. The hardship to Digi if it may not use Intellectual Property and Patents that it does not rightly own is minimal compared to the hardship that will be suffered if Mr. Felichko continues to be deprived of any compensation or ability to market the technology he spent years developing.

127. The public interest would be served by an injunction because the public has an interest in ensuring that successful inventors receive fair compensation for their inventions and are not unjustly deprived, without consideration, of ownership of the same.

WHEREFORE, plaintiff Kevin Felichko respectfully requests that the Court:

28

A. Enter an order enjoining Digi from marketing, developing, licensing, selling, assigning or in any other way using the Intellectual Property and the Patents;

B. Award Mr. Felichko his costs and attorneys' fees incurred in bringing this action; and

C. Grant such other relief as is just and appropriate under the circumstances.

Jodie E. Buchman
Pierce C. Murphy
Silverman Thompson Slutkin & White, LLC
201 North Charles Street,
Suite 2600
Baltimore, Maryland 21201
(410) 385-2225
(410) 547-2432 (facsimile)

*Attorneys for Plaintiff Kevin Felichko*

29

## VERIFICATION

I, Kevin Folichko, have read the foregoing Verified Complaint in the captioned matter. I have personal knowledge of the facts alleged in the Verified Complaint. The facts set forth therein are true and correct to the best of my knowledge, information and belief. I make this verification subject to penalty of perjury.

Date: 04/05/2018

Kevin Folichko

30