IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN FELICHKO      *

     Plaintiff,      *

            Civil Action No. RDB-18-1392

     v.      *

HARRY SCHECHTER, *et al.*,      *

     Defendants.      *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Kevin Felichko ("Plaintiff" or "Felichko") brings this action against Harry Schechter ("Schechter"), Jeremy MacDonald ("MacDonald"), Schechter Tech LLC ("Schechter Tech" or the "Company"), and Digi International, Inc. ("Digi") (collectively, the "Defendants") alleging that Defendants have unlawfully deprived Felichko of compensation owed to him from the sale of Schechter Tech to Digi. (Compl. ¶ 1, ECF No. 2.) This case was originally filed in the Circuit Court for Frederick County, Maryland and was removed to this Court based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.

Currently pending before this Court is Defendant Digi International Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (ECF No. 26) and Defendants Harry Schechter, Jeremy MacDonald and Schechter Tech LLC's Motion to Dismiss (ECF No. 28).[1] The submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016).

---

[1]      Defendants Schechter, MacDonald, and Schechter Tech move to dismiss all claims against MacDonald for lack of personal jurisdiction and to dismiss Counts II, III, IV, V, VII, VIII, IX, X, and XI for failure to state a claim. (ECF No. 28.)

For the following reasons, Digi's Motion to Dismiss (ECF No. 26) is GRANTED. Digi is DISMISSED for lack of personal jurisdiction.[2] The Motion to Dismiss filed by Schechter, MacDonald, and Schechter Tech (ECF No. 28) is GRANTED IN PART and DENIED IN PART. Specifically, this Court has jurisdiction with respect to the claims against Schechter, MacDonald, and Schechter Tech; Plaintiff's claim for Breach of Contract – Stock Options (Count IV), to the extent it is asserted against MacDonald and Schechter, is DISMISSED; and Plaintiff's claims for Breach of Contract – Covenants of Good Faith and Fair Dealing (Count III), Constructive Fraud (Count VII), Intentional Interference with Prospective Economic Advantage (Count X), and Bad Faith Termination (Count XI) are DISMISSED.

The following claims remain:

| Count | Asserted Against |
|---|---|
| Count I – Unjust Enrichment – Unit Options | Schechter, MacDonald, Schechter Tech |
| Count II – Unjust Enrichment – Intellectual Property | Schechter, MacDonald, Schechter Tech |
| Count IV – Breach of Contract – Stock Options | Schechter Tech |
| Count V – Declaratory Judgment – Ownership of Patents | Schechter, MacDonald, Schechter Tech |
| Count VI – Declaratory Judgment – Ownership of Units | Schechter, MacDonald, Schechter Tech |
| Count VIII – Fraud | Schechter, MacDonald, Schechter Tech |
| Count IX – Negligent Misrepresentation | Schechter |

---

[2]     This results in the dismissal of Count XII, which was asserted only against Digi.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). This case arises out of Digi International, Inc.'s multi-million-dollar acquisition of Schechter Tech, a company owned and operated by Schechter and MacDonald. (Compl. ¶ 1, ECF No. 2.) Felichko has alleged that he received no compensation from the sale because of Schechter and MacDonald's scheme to defraud him, despite his hard work developing and patenting the intellectual property that was the Company's most valuable asset. (*Id.*)

In 2002, Plaintiff Kevin Felichko of Frederick County, Maryland began working for Schechter, who resides in Massachusetts, as a part-time contracted software engineer on a project dubbed "Temperature Bug." (*Id.* at ¶ 17.) As he continued to work on the project, Temperature Bug became "Temperature@lert" and, subsequently, an asset of Schechter Tech. (*Id.*) By 2005, Felichko was performing work for both Temperature@lert and another Schechter project called AnyBill. (*Id.* at ¶ 18.) Felichko's compensation was paid by AnyBill. (*Id.*) From 2005 until mid-2007, Felichko received about $6,000 in compensation from Schechter and his companies. (*Id.*)

After Schechter left AnyBill in 2007, he called Felichko in Maryland and told him that he could continue working for Temperature@lert under one of two compensation models. (*Id.* at ¶ 19.) Under the first model, Felichko would continue working in the same manner and receive occasional cash payments from Schechter as funds were available. (*Id.* at ¶ 20.)

Under the second model, Felichko would continue his work at Temperature@lert in exchange for a long-term equity interest. (*Id.* at ¶ 21.) Felichko chose the second option (the equity-interest model). (*Id.* at ¶ 22.) Despite his promise to put this agreement in writing, Schechter did not provide Felichko with any written confirmation for over a year. (*Id.* at ¶¶ 22-23.) In the meantime, Felichko continued to work on Temperature@lert without any monetary compensation, in reliance on Schechter's promise that he would receive equity-based compensation. (*Id.* at ¶ 23.)

On August 7, 2008, Felichko took time off from his other employment to work around the clock to resolve an issue with "Offsite Alert," Temperature@lert's core technology. (*Id.* at ¶ 24.) Over the course of three days, Felichko created a new product called "Sensor Cloud" that was vastly more efficient than Offsite Alert. (*Id.* at ¶ 25.) Eventually, Felichko and Schechter obtained patents on Sensor Cloud and related technologies. (*Id.* at ¶ 25.) Although Schechter and Felichko purportedly assigned the patents to Schechter Tech, Felichko did not receive any compensation for the transaction. (*Id.* at ¶ 26.)

On October 8, 2008, Schechter sent an email to Felichko requesting updates on Felichko's progress on various projects he was developing for Schechter Tech. (*Id.* at ¶ 27.) Felichko responded on October 10, 2008 by email. (*Id.*) Felichko provided the requested updates and inquired about the status of the promised paperwork that would memorialize his equity interests in Schechter Tech. (*Id.* at ¶ 27.) Schechter responded by email and blamed "the lawyers" for taking too long on the documentation. (*Id.* at ¶ 28.) Schechter promised to make Felichko's "10% ownership official" and promised to "talk about cash

and add'l [sic] incentives for you as the company grows." (*Id.*) These additional compensation options never materialized. (*Id.*)

Later, Felichko received a document entitled "Schechter Tech LLC 2007 Unit Option Plan Unit Option Agreement" (the "Option Agreement"). (*Id.* at ¶ 29; ECF Nos. 2-3.) Felichko alleges that "2007" in the title was a misnomer; Schechter's emails to Felichko indicated that the document had not yet been prepared as of October 10, 2008, and the first page references the "2008 Unit Option Plan," although the date on the signed Option Agreement is November 1, 2007. (*See id.*) Felichko signed the Option Agreement in Maryland. (Compl. ¶ 30, ECF No. 2.) Schechter, as CEO of Schechter Tech, also signed it. (*Id.*) The Option Agreement specified that Felichko had the option to buy up to 1,000,000 units of Schechter Tech at the price of $0.0125 each. (*Id.* at ¶ 31.) Schechter assured Felichko that 1,000,000 units of Schechter Tech constituted ten percent of its total units (*i.e.*, Schechter Tech was comprised of 10,000,000 units). (*Id.* at ¶ 32.) Felichko's options vested on the "Measurement Date" which, by the terms of the Option Agreement, was November 1, 2008. (*Id.* at ¶ 33.)

The Option Agreement incorporates by reference the "Company's 2008 Unit Option Plan (as the same may be amended from time to time, the "Plan")." (*Id.* at ¶ 34; ECF No. 2-3.) Schechter Tech has refused to provide all versions of the Plan to Felichko. (Compl. ¶ 35, ECF No. 2.) Schechter Tech has provided Felichko only with the "Schechter Tech LLC 2007 Unit Option Plan." (*Id.*) While Article I of this document refers to itself as the "2008 Unit Purchase Option Plan," it did not contain an execution date or any signatures. (*Id.*; ECF No. 2-4.) Felichko avers that Schechter amended the Plan, without notifying Felichko,

to solely benefit Schechter and MacDonald. (Compl. ¶ 36, ECF No. 2.) Felichko posits that Schechter has withheld all amendments to the Plan to prevent him from exercising his rights thereunder and otherwise receiving fair and just compensation. (*Id.*)

In 2012, Felichko and Schechter discussed the possibility of Felichko joining Schechter Tech on a full-time, paid basis. (*Id.* at ¶ 38.) Felichko indicated in an email, sent from Maryland, that he currently owned ten percent of Schechter Tech and that he was willing to take a salary cut to join the Company in exchange for "bonuses or additional equity." (*Id.*) Schechter did not dispute Felichko's representations about his ownership interest. (*Id.* at ¶ 39.) These discussions floundered. (*Id.*) Felichko continued to do work for Schechter Tech with no additional pay, content with his ten percent ownership interest. (*Id.*)

Subsequently, and unbeknownst to Felichko, Schechter asserted ownership in 82,000,000 units of Schechter Tech. (*Id.* at ¶ 40.) Felichko alleges that Schechter awarded himself 73,800,000 additional units of Schechter Tech without consideration and without providing any increase to Felichko's unit options. (*Id.* at ¶ 41.) MacDonald also received tens of millions of units in Schechter Tech in exchange for effectively no consideration. (*Id.* at ¶ 42.) With these new issuances, Felichko's purported ten percent ownership interest appeared to constitute less than one percent of Schechter Tech's units. (*Id.*) Upon information and belief, Felichko alleges that Schechter and MacDonald agreed and intended that the purpose of these transactions were to enrich themselves at the Felichko's expense and to prevent him from receiving fair and just compensation. (*Id.*) While Schechter and MacDonald surreptitiously issued themselves millions of new units, Felichko worked at all

hours of the day, and often every day of the week (including weekends), to refine and support Sensor Cloud. (*Id.* at ¶ 43.)

In May 2016, Schechter called Felichko unprompted and made an oral offer to "buy back" Felichko's options for $200,000. (*Id.* at ¶ 44.) Felichko consulted with a financial advisor and responded to the offer by email, submitting a series of questions, including an inquiry about the valuation of Schechter Tech. (*Id.* at ¶ 44.) On May 10, 2016, Schechter responded, writing:

> Yes, a valuation was done that put the company value at about $2M. This was about a year ago. For the year it was valued, we had about $250k of profit (2014). The company lost $300k in 2015. A new valuation has not been performed yet.

(*Id.* ¶ 45.) Felichko contends that this representation was false. (*Id.* at ¶ 46.) He claims that Schechter lied to him to induce his surrender of his options for much less than their actual value. (*Id.*) Felichko posits that since Schechter offered him $200,000 for a company that he'd stated was valued at $2 million, he was representing that Felichko owned ten percent of Schechter Tech. (*Id.* at ¶ 47.) Felichko declined the offer. (*Id.* at ¶ 48.)

On November 3, 2016, Schechter called Felichko and told him that he was "ending his association with" the Company, as a "mere formality needed to clear up some of the Company's records." (*Id.* at ¶ 48.) He followed-up with an email confirming that Felichko's association with Temperature@lert had ended. (*Id.*) After that date, Felichko and Schechter were not in frequent contact, but Felichko retained his access to his Temperature@lert email account. (*Id.* at ¶ 50.) In March 2017, Felichko emailed Schechter to schedule a phone call.

(*Id.*) The two set up a time to speak, but Schechter did not answer his phone and thereafter ignored Felichko. (*Id.*)

On October 21, 2017, Schechter announced "exciting company news" to all holders of Temperature@lert email addresses. (*Id.* at ¶ 51.) Felichko replied using his Temperature@lert email address, seeking additional information. (*Id.*) That afternoon, Felichko and Schechter spoke on the phone. (*Id.* at ¶ 51.) Schechter represented that Schechter Tech was being sold in a fire sale that would provide no return to the Company's co-founders. (*Id.* at ¶ 52.) On October 23, 2017, Felichko emailed Schechter from his Temperature@lert email address to request a follow-up call. (*Id.* at ¶ 54.) Later that day, his access to that email account was terminated. (*Id.*) Felichko followed up with his personal email address, and the two scheduled an October 24 call. (*Id.*) During that phone call, Schechter again misrepresented the nature of the sale. (*Id.* at ¶ 55.) Schechter explained that all unit options were "wiped out" in November 2016 because they were "underwater." (*Id.*) Only outside investors who had subsequently funded the Company received payments from the sale (*Id.*)

On October 20, 2017, Digi, Schechter, MacDonald, and Schechter Tech HoldCo LLC (a newly-formed company created to facilitate the transaction) entered into an Equity Purchase Agreement (the "Purchase Agreement"). (*Id.* at ¶ 57.) Under the Purchase Agreement, Schechter and MacDonald were to receive a $45,000,000 cash payment to HoldCo and earnout payments for 2018 and 2019 in the maximum amount of $75,000,000. (*Id.*) Felichko alleges that Schechter and MacDonald structured the transaction in this manner to ensure that he received no compensation or payout from the sale, and that the

two made misrepresentations to Digi about Felichko's options, role in the Company, and his patent rights. (*Id.* at ¶ 58.)

After he learned of the sale, on October 31, 2017, Felichko exercised his vested options to one million units of Schechter Tech by sending the purchase price and a signed Option Exercise Form (ECF No. 2-5) to Schechter. (Compl. ¶ 62, ECF No. 2.) On November 2, 2017, Schechter signed for the delivery of the Option Exercise Form. (*Id.* at ¶ 63.) The two spoke about the transaction later that day. (*Id.*) Schechter explained that all the options had been "cancelled" by "the attorneys" because they were "not exercisable" and that even if the options were exercisable, there would not be "much left to award after adjustments" upon closing. (*Id.*) Plaintiff alleges that these representations were false. (*Id.* at ¶ 63.)

On April 6, 2018, Felichko filed a Complaint against Defendants in the Circuit Court for Frederick County, Maryland, asserting the following 12 counts:[3]

| Count | Asserted Against |
|---|---|
| Count I – Unjust Enrichment – Unit Options | All Defendants |
| Count II – Unjust Enrichment – Intellectual Property | All Defendants |
| Count III – Breach of Contract – Covenants of Good Faith and Fair Dealing – The Company and Harry Schechter. | Schechter, Schechter Tech |
| Count IV – Breach of Contract – Stock Options – The Company | All Defendants |
| Count V – Declaratory Judgment – Ownership of Patents | All Defendants |
| Count VI – Declaratory Judgment – Ownership of Units | All Defendants |
| Count VII – Constructive Fraud | Schechter, Schechter Tech |

[3]    This Court has interpreted a Count to be asserted against all Defendants if the prayer for relief included "against the Defendants, jointly and severally," regardless of the heading.

| Count | Asserted Against |
|-------|------------------|
| Count VIII – Fraud | All Defendants |
| Count IX – Negligent Misrepresentation | Schechter |
| Count X – Intentional Interference with Prospective Economic Advantage | Schechter, MacDonald, Schechter Tech |
| Count XI – Bad Faith Termination | Schechter and Schechter Tech |
| Count XII - Injunction | Digi |

(ECF No. 2 at 15-29.)

Defendants removed the case to this Court on May 14, 2018. Two motions to dismiss have been filed. Defendants Schechter, MacDonald, and Schechter Tech request that: (1) all claims asserted against MacDonald be dismissed for lack of personal jurisdiction; and (2) Counts II, III, IV, V, VII, VIII, IX, X, and XI be dismissed for failure to state a claim.[4] (ECF No. 28.) Digi moves to dismiss all claims against it for lack of personal jurisdiction, joins the remaining Defendants' motion to dismiss for failure to state a claim to the extent that the arguments apply to any claims against Digi, and moves to dismiss Count XII against Digi on the basis that if the claims regarding the patents at issue are barred by the statute of limitations, no injunction can issue. (ECF No. 26.)

For the reasons that follow, Digi's Motion to Dismiss (ECF No. 26) is GRANTED. Digi is DISMISSED for lack of personal jurisdiction. The Motion to Dismiss filed by Schechter, MacDonald, and Schechter Tech (ECF No. 28) is GRANTED IN PART and DENIED IN PART. Specifically, this Court has jurisdiction with respect to the claims against Schechter, MacDonald, and Schechter Tech; Plaintiff's claim for Breach of Contract – Stock Options (Count IV), to the extent it is asserted against MacDonald and Schechter, is

---

[4]     I.e., Counts I, VI, and XII were not challenged for failure to state a claim by this motion. (ECF No. 28.) Count XII, however, was asserted only against Digi, and this Court will GRANT Digi's motion to dismiss all claims against it.

DISMISSED; and Plaintiff's claims for Breach of Contract – Covenants of Good Faith and Fair Dealing (Count III), Constructive Fraud (Count VII), Intentional Interference with Prospective Economic Advantage (Count X), and Bad Faith Termination (Count XI) are DISMISSED.

The following claims remain:

| Count | Asserted Against |
|---|---|
| Count I – Unjust Enrichment – Unit Options | Schechter, MacDonald, Schechter Tech |
| Count II – Unjust Enrichment – Intellectual Property | Schechter, MacDonald, Schechter Tech |
| Count IV – Breach of Contract – Stock Options | Schechter Tech |
| Count V – Declaratory Judgment – Ownership of Patents | Schechter, MacDonald, Schechter Tech |
| Count VI – Declaratory Judgment – Ownership of Units | Schechter, MacDonald, Schechter Tech |
| Count VIII – Fraud | Schechter, MacDonald, Schechter Tech |
| Count IX – Negligent Misrepresentation | Schechter |

## STANDARD OF REVIEW

### I. Motion to Dismiss for Lack of Personal Jurisdiction

A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction challenges a court's authority to exercise its jurisdiction over the moving party. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The jurisdictional question is "one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Id.*; *Sigala v. ABR of VA, Inc.*, 145 F. Supp. 3d 486, 489 (D. Md. 2014). While a court may hold an evidentiary hearing or permit discovery as to the jurisdictional issue, it also may resolve the issue on the basis of the complaint, motion papers, affidavits, and other supporting legal memoranda. *Consulting*

*Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also Sigala*, 145 F. Supp. 3d at 489. If a court does not hold an evidentiary hearing or permit discovery, a plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Eng'rs Corp.*, 561 F.3d at 276. When considering whether the plaintiff has made the requisite showing, "the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Notably, "a threshold prima facie finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (emphasis in original) (citation omitted).

## II. Motion to Dismiss for Failure to State a Claim

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To satisfy Rule 8(a)(2), a complaint need not include "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable

inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirecTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017).

Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud be stated with particularity." Fed. R. Civ. P. 9(b). The rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991). To satisfy the rule, a plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007). As the United States Court of Appeals for the Fourth Circuit stated in *United States ex rel. Nathan v. Takeda Pharms. North America, Inc.*, 707 F.3d 451 (4th Cir. 2013), the aims of Rule 9(b) are to provide notice to defendants of their alleged misconduct, prevent frivolous suits, eliminate fraud actions where all the facts are learned after discovery, and protect defendants from harm to their goodwill and reputation. 707 F.3d at 456 (citation omitted).

## ANALYSIS

### I.      Personal Jurisdiction

Both MacDonald and Digi argue that all claims must be dismissed against them because Felichko has not established that this Court may exercise personal jurisdiction over them. (Defs.' Mem. Mot. 9-13, ECF No. 28-1; Digi's Mem. Mot. 5, ECF No. 26.) Before a court can exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute

pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure; and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. *Carefirst*, 334 F.3d at 396; *Sigala*, 145 F. Supp. at 489. To satisfy the first prong, a plaintiff must identify a provision in the Maryland long-arm statute that authorizes jurisdiction. *Ottenheimer Pubs., Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). When interpreting the reach of Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc., § 6-103(b), this Court must adhere to the interpretations of the Maryland Court of Appeals. *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985); *Tulkoff Food Prod., Inc. v. Martin*, No. ELH-17-350, 2017 WL 2909250, at *4 (D. Md. July 7, 2017) (citation omitted).

Although Maryland courts "have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set out by the Due Process Clause of the Constitution," *Carefirst*, 334 F.3d at 396, courts must address both prongs of the personal jurisdiction analysis. *Metro. Reg'l Info. Sys., Inc. v. American Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 699 (D. Md. 2012); *CSR, Ltd. v. Taylor*, 983 A.2d 492, 502-03 (Md. 2009). Under the second prong, courts determine whether the exercise of personal jurisdiction comports with the Fourteenth Amendment's due process requirements. For a non-resident defendant, "due process requires only that . . . a defendant . . . have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A "minimum contacts" determination rests on the number and relationship of a defendant's contacts to the forum state, as well as whether

14

the present cause of action stems from the defendant's alleged acts or omissions in the forum state. *Id.*

Thus, a court may exercise two types of personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). General jurisdiction arises from a defendant's continuous and systematic contacts in the forum state. *Id.* On the other hand, specific jurisdiction arises when there is an "affiliation between the forum and the underlying controversy." *Id.*; *Carefirst*, 334 F.3d at 397. When assessing specific jurisdiction, the United States Court of Appeals for the Fourth Circuit considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers*, 561 F.3d at 278.

### A.     Personal Jurisdiction Over MacDonald

Felichko does not argue that MacDonald has sufficient personal contacts with Maryland to satisfy directly either Maryland's long-arm statute or the requirements of due process. Rather, Felichko argues that he has sufficiently alleged a conspiracy between MacDonald and Schechter. (Pl.'s Resp. 20, 23, ECF No. 32.) The "Court of Appeals [of Maryland] has found [the civil conspiracy theory] of jurisdiction included within the Maryland long-arm statute because the provisions apply to a person who commits acts 'directly *or by an agent*.'" *Cleaning Auth. Inc. v. Neubert*, 739 F. Supp. 2d 807, 816 (D. Md. 2010) (quoting *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 484, 493 (Md. 2006). Under the

15

conspiracy theory of jurisdiction, much like the agency concept of jurisdiction, a party "may be subject to suit in the forum jurisdiction based upon a co-conspirator's contacts with the forum state." *Mackey*, 892 A.2d at 484. "Simply stated, the conspiracy theory of personal jurisdiction allows a court to exercise jurisdiction over an out-of-state defendant whose co-conspirators have committed jurisdictionally sufficient acts within the forum state." *Capital Source Fin., LLC v. Delco Oil, Inc.*, 625 F. Supp. 2d 304, 315 (D. Md. 2007) (citing *Mackey*, 892 A.2d at 484.)

The Maryland Court of Appeals provided four elements that must be satisfied for a court to exercise conspiracy jurisdiction over a defendant:

> (1) two or more individuals conspire to do something
>
> (2) that they could reasonably expect to lead to consequences in a particular forum, if
>
> (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and
>
> (4) those acts are of a type which, if committed by a non-resident, would subject the nonresident to personal jurisdiction under the long-arm statute of the forum state . . . .

*Mackey*, 892 A.2d 479 at 486 (quoting *Cawley v. Bloch*, 544 F. Supp. 133, 135 (D. Md. 1982)). Importantly, the Court emphasized that the second element is satisfied "only if the other co-conspirator reasonably expects *at the time the other conspirator agreed to participate in the conspiracy* . . . that such acts will subject the co-conspirator who performs them to the personal jurisdiction of the forum state." *Id.* at 489. Although all four elements are required, it is this second element that is crucial to making the conspiracy theory of jurisdiction constitutional. Notably, it invokes a reasonable person standard and no proof of actual

knowledge is necessary. *Id.* at 495-96. However, the hypothetical "reasonable person" must form the pertinent expectation at the time the agreement with the co-conspirator was formed. *Id.* at 489.

At this stage, Felichko must allege a *prima facie* claim of civil conspiracy, i.e., "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or means employed must result in damages to the plaintiff." *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 821 (D. Md. 2005) (quoting *BEP, Inc. v. Atkinson*, 174 F. Supp. 2d 400, 408 (D. Md. 2001)). Conspiracy is not a tort on its own but is dependent on some underlying tort that caused injury to the plaintiff. *Id.* (citations omitted).

MacDonald, a Massachusetts resident, argues that all claims against him must be dismissed for lack of personal jurisdiction because the sole basis for personal jurisdiction in this Court is an inadequately pled conspiracy theory. (Defs.' Mem. Mot. 9-13, ECF No. 28-1.) MacDonald contends that Felichko has failed to properly allege fraud, which formed the basis of the alleged conspiracy. (*Id.* at 10.) Plaintiff responds that he has adequately pled fraud by, for example, alleging that MacDonald and Schechter made four false statements to him; the two acted in concert by issuing millions of shares in Schechter Tech to themselves; and they "withheld material information regarding the value of Schechter Co. with the intent to defraud" Felichko. (Pl.'s Resp. 25, ECF No. 32.) In reply, MacDonald attacks Felichko's fraud allegation on the grounds that it (1) fails to allege that Felichko relied on any of

MacDonald's representations; and (2) contrary to Felichko's representations in his Response, it fails to state a fraudulent concealment claim. (Defs.' Reply. 3-5, ECF No. 34.)

The circumstances constituting fraud or mistake must be stated with particularity. Fed. R. Civ. P. 9(b). To satisfy the rule, a plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007).

> To state a fraud claim under Maryland law, a plaintiff must allege five elements with particularity: (1) the defendant made a false statement of fact; (2) the defendant knew the statement was false or acted with reckless disregard for the truth of the statement; (3) the defendant made the statement for the purpose of defrauding the plaintiff; (4) the plaintiff reasonably relied on the false statement, and (5) the plaintiff was damaged as a result.

*Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013) (quoting *Thompson v. Countrywide Home Loans Servicing, L.P.*, No. L–09–2549, 2010 WL 1741398, at *3 (D. Md. Apr. 27, 2010)).

Felichko alleged that in May 2016, Schechter "intentionally made false representations about the value of the Company," including that it was worth $2 million when in fact Digi would, not much later, pay more than $45 million for it in a transaction deliberately structured to exclude him. (Compl. ¶¶ 44-45, 57, 107, ECF No. 2.) Felichko alleged that Schechter make this false representation to prevent him from exercising his options, he relied on Schechter's false representation and did not exercise his options, and he was damaged by being deprived of the benefit he would have obtained had he exercised his options. (*Id.* at ¶¶ 46, 108-110.) Felichko also alleged that on October 21, 2017, Schechter

falsely told Felichko that "the Company was being sold in a fire sale that would provide no return to the Company's founders," in an effort to defraud Felichko out of receiving value for his contributions and options. (*Id.* at ¶¶ 15, 52-53.) Additionally, Felichko alleged that on October 24, 2017, Schechter falsely told him that all the unit options had been wiped out in November 2016 because they were underwater, and these statements were made to interfere with his ability to obtain value for his options. (*Id.* at ¶¶ 15, 55-56.) On November 2, 2017, Schechter told Felichko that his options had been cancelled by the attorneys and there would not have been "much left to award after adjustments" anyway. (*Id.* at ¶ 63.) Further, Felichko alleged that he continued to work for the benefit of the Company because he did not know that Schechter and MacDonald were acting to destroy the value of his options. (*Id.* at ¶ 43.) Felichko alleges that Schechter and MacDonald concealed from him that they had issued millions of additional units in the company to themselves for no consideration, diluting Felichko's 10% ownership, but continued to represent that Felichko's options still represented 10% of the Company, and Felichko declined to take a salary, relying on the promises that the options would be more valuable. (*Id.* at ¶¶ 12-13, 23, 38, 40-42, 47.) These allegations taken together, and accepted as true, identify all five elements of a fraud claim with sufficient precision to survive a dismissal motion.

Therefore, Felichko has sufficiently pled an underlying tort to support his claim of conspiracy. The allegations also support a *prima facie* claim of civil conspiracy because Felichko has alleged that Schechter and MacDonald agreed and conspired to perform the fraudulent acts, knowing that those acts would injure Felichko in Maryland, enriching themselves at his expense. (*Id.* at ¶¶ 1, 4, 42, 57, 64.) Felichko sufficiently alleges that

Schechter and MacDonald knew at that time they were taking the actions, that the result of their actions would harm a Maryland resident, such that a reasonable person could have foreseen that Maryland could exercise jurisdiction over all the conspirators to those actions.[5]

## B. Personal Jurisdiction Over Digi

Digi argues that this Court lacks general jurisdiction over it because it is not "at home" in Maryland. (Digi's Mem. Mot. 5-6, ECF No. 26.) It further contends that this Court may not exercise specific jurisdiction because Plaintiff cannot establish that Digi has sufficient minimum contacts with Maryland nor can he establish that his claims arise out of Digi's activities directed at Maryland. (*Id.* at 7-8.) Plaintiff has responded by supplying evidence which purports to show that Digi has multiple contacts with the State of Maryland. (Pl.'s Resp. 6-8, ECF No. 31.) Digi casts doubt on this evidence and also argues that Plaintiff has failed to demonstrate that its contacts with Maryland are related to Plaintiff's claims. (Defs.' Reply 2-3, ECF No. 33.)

Digi is incorporated in Delaware and maintains its principal place of business in Minnetonka, Minnesota. (Compl. ¶ 6, ECF No. 2.) Digi states that it has no offices, facilities, or mailing addresses in Maryland. (Digi's Mem. Mot. 6, ECF No. 26.) Felichko's evidence of Digi's contacts in Maryland—a Yelp.com and Manta.com reference to a location in Frederick, Maryland, a profile on SBContract.com referencing a government sales manager located in Frederick, Maryland, and a LinkedIn reference to a sales account executive in Baltimore, Maryland—are not sufficient to create the exceptional level of systematic and continuous contact that would support general jurisdiction. *See Daimler AG v.*

---

[5]     Of course, Felichko must eventually prove the existence of personal jurisdiction. *See Sneha Media & Enter., LLC v. Associated Broad. Co.*, 911 F.3d 192, 197 (4th Cir. 2018).

*Bauman*, 571 U.S. 117, 137-39 (2014). Felichko argues, however, that these contacts do provide a basis for specific jurisdiction.

In this case, Felichko's arguments fail to establish specific jurisdiction because he cannot satisfy the second prong of the Fourth Circuit's three-part test, even assuming he could satisfy prongs one and three. *See Consulting Engineers*, 561 F.3d at 278. The second prong requires that Felichko show that his claims arise out of the activities that he argues are directed at Maryland, or a connection between the activities in the State and the underlying controversy. *See id.*; *see also PTA-FLA, Inc. v. ZTE Corporation*, 715 F. App'x 237, 242 (4th Cir. 2017). Digi's minimal contacts with Maryland are simply not related to this litigation. In this litigation, Digi's involvement is limited to its purchase of a Delaware company located in Massachusetts. The negotiations and contracts related to the purchase occurred in Massachusetts. There are no allegations that Digi was even aware of Felichko, his contributions to Schechter Tech's product, or his Option Agreement. Rather, Felichko alleges that Schechter and MacDonald concealed the Company's obligations to him from Digi. (Compl. ¶ 117, ECF No. 2.) Whether or not Digi has a sales presence in Maryland has no relevance to the underlying controversy. Digi did not purposefully direct activity to Maryland through its purchase of Schechter Tech such that it could have expected to be haled into court here.[6] As such, this Court's exercise of personal jurisdiction over Digi would not be constitutionally reasonable, and this Court shall grant Digi's motion to dismiss all claims against it.

---

[6]    Felichko has requested limited jurisdictional discovery, but further discovery would not change this analysis. There is nothing to link Digi's sales or contacts with Maryland to Felichko's claims. Further, Felichko's Complaint contains no allegations against Digi that would create liability on its part; Digi is simply the purchaser of Schechter Tech and its assets.

## II.     Failure to State a Claim

### A.     Choice of Law

As an initial matter, this Court must follow Maryland choice of law rules. *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013) (holding that "[a] federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules"). Maryland courts recognize that parties' contractual choice-of-law provisions trump rules that would otherwise apply. *Id.* ("Such choice-of-law provisions 'trump the conflict of law rules that otherwise would be applied by the court'"), quoting *Jackson v. Pasadena Receivables, Inc.*, 921 A.2d 799, 802 (Md. 2007). Felicho's claims regarding the Option Agreement are, therefore, governed by Delaware law based on the contract's choice of law: "This Agreement shall be construed and enforced in accordance with the laws of the State of Delaware, without regard to the conflict of laws principles thereof . . . ."[7] (Option Agmt. ¶ 7, ECF No. 2-3.)

After finding a choice-of-law provision valid, a court must still determine to which claims the relevant law applies. In this case, the Option Agreement provides for the application of Delaware law to the contract itself, but it does not contain the broad "arising out of or related to" language that would encapsulate contract-related tort claims. *See Superior Bank, F.S.B. v. Tandem Nat. Mortg., Inc.*, 197 F. Supp. 2d 298, 309 (D. Md. 2000); *see also Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1300 (11th Cir. 2003) (construing a similarly-worded clause as narrow and not applicable to tort claims).

---

[7]     The parties appear to agree that Delaware law applies to the contract claims.

As to tort claims, Maryland applies the law of the state where the alleged harm occurred ("*lex loci delicti commissi*"), *see, e.g., Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011), which in this case is Maryland.

Felichko asserts two claims that are related to the patent assignments to Schechter Tech—Counts II (Unjust Enrichment – Intellectual Property) and V (Declaratory Judgment – Ownership of Patents), which Defendants argue are time-barred. While state law governs the interpretation of contracts generally, some questions related to patent assignments, such as standing, are resolved by Federal Circuit law. *See Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010); *see also Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed Cir. 1996) ("[T]he proper construction of the assignment agreements . . . is a matter of state contract law."). The patent assignment agreements contain no choice-of-law provision. (Patent Assignment Agmts., ECF Nos. 28-2, 28-3, 28-4.) Where there is no choice-of-law provision in a contract, Maryland applies the law of the state where the contract was made ("*lex loci contractus*"). *See, e.g., Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 659 A.2d 1295, 1301 (1995).

With regard to the statute of limitations issue, the parties both use Delaware law to support their arguments, although there is nothing about the assignments that indicate the contracts were made in Delaware. Defendants note that analysis under Maryland law would be identical since the same statute of limitations applies. (Defs.' Mot. Mem. 15 n. 16, ECF No. 28-1 (citing *Murray v. Midland Funding, LLC*, 163 A.3d 271, 274, 233 (Md. Ct. Spec. App. 2017).) Because the parties appear to be in agreement on the application of Delaware law, this Court will follow the parties' lead and assume, without deciding, that Delaware law

applies to this issue for the purpose of deciding this dismissal motion. *See, e.g., Lafranchise v. Wal-Mart Stores, Inc.*, Civil Action No. ELH-14-3720, 2015 WL 2244139, at *4 (D. Md. 2015) (applying Maryland law based on parties' assumption that Maryland law applies); *Goel Services, Inc. v. Kevin Dockett, Sr. Trucking, Inc.*, Civil Action No. 8:12–cv–01377–AW, 2012 WL 5252057, at *4 (D. Md. 2012) (applying Maryland law based on the parties citing exclusively to Maryland law to support their arguments).

## B.  Patent Assignments – Statute of Limitations

Defendants seek dismissal of the two claims arising out of the patent assignments, Counts II and V, on statute-of-limitations grounds. (Defs.' Mot. Mem. at 14, ECF No. 28-1.)  Additionally, Digi argues that Count XII should be dismissed because an injunction cannot issue if the patent claims are barred by the statute of limitations. (Digi's Mot. Mem. at 9-10, ECF No. 26.)[8]  As discussed above, this Court will apply Delaware law to this issue. Delaware applies a three-year statute of limitations to unjust enrichment claims.[9]  10 Del. Code Ann. tit. 10 § 8106(a); *Hydrogen Master Rights, LTD. v. Weston*, 228 F. Supp. 3d 320 (D. Del. 2017); *Pulieri v. Boardwalk Prop., LLC*, 2015 WL 691449, at *13 (Del. Ch. Feb. 18, 2015) ("The analogous statute of limitations for a claim of unjust enrichment is three years").  The same three-year statute of limitations applies under Delaware law to a declaratory judgment

---

[8]      All claims asserted against Digi will be dismissed for lack of personal jurisdiction against Digi, so this request is moot, given that there are no allegations that would avoid the ordinary rule that non-parties are not subject to court injunctions. *See* Fed. R. Civ. P. 65(d)(2)(C) (allowing injunctions against non-parties "who are in active concert or participation" with an enjoined party).

[9]      "A statute of limitations period at law does not automatically bar an action in equity because actions in equity are time-barred only by the equitable doctrine of laches. Where the plaintiff seeks equitable relief, however, the Court of Chancery applies the statute of limitations by analogy. Absent a tolling of the limitations period, a party's failure to file within the analogous period of limitations will be given great weight in deciding whether the claims are barred by laches." *Whittington v. Dragon Group, L.L.C.*, 991 A.2d 1, 9 (Del. Supr. 2009) (citations omitted).

claim regarding the validity of a contract. *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 985, 988 (Del. Ch. 2016).

Felichko signed the patent assignment agreements on November 20, 2008, Schechter signed them on December 1, 2008, and the initial recordation at the United States Patent and Trademark Office was on December 4, 2008. (Patent Assignment Agmts., ECF Nos. 28-2, 28-3, 28-4.) Defendants assert that Felichko's claims, therefore, became stale in 2011. (Defs. Mot. Mem 17, ECF No. 28-1.) Felichko argues that the assignment contracts are subject to a 20-year statute of limitations because they were executed under seal. (Pl.'s Resp. 16, ECF No. 32.)

The "one exception to the three-year statute of limitations for contract actions specified in title 10, section 8106 is for contracts under seal, for which the common law twenty-year period applies." *Whittington v. Dragon Group, L.L.C.*, 991 A.2d 1, 10 (Del. Supr. 2009) (citations omitted). In *Whittington*, the Court considered what evidence is necessary to distinguish a sealed contract from an ordinary, unsealed contract, noting that not all states recognize a contract under seal or "specialty contract." *Id.* at 10 n.24, 12-13. The *Whittington* Court held that "in Delaware, in the case of an individual, in contrast to a corporation, the presence of the word 'seal' next to an individual's signature is all that is necessary to create a sealed instrument, 'irrespective of whether there is any indication in the body of the obligation itself that it was intended to be a sealed instrument.'" *Id.* at 14 (quoting *In re Beyea's Estate*, 15 A.2d 177, 180 (Orphan's Ct. 1940)). Importantly, "*Whittington* did not hold that a testimonium clause alone is enough to demonstrate intent under seal." *Sunrise*

*Ventures, LLC v. Rehoboth Canal Ventures, LLC*, C.A. No. 4119-VCS, 2010 WL 975581, at *2 (Del. Ch. 2010).

The assignments at issue contain a testimonium clause: "This instrument is executed under seal." (Patent Assignment Agmts., ECF Nos. 28-2, 28-3, 28-4.) The signatures, however, do not have the word "seal" next to them nor is there an actual seal. *Id.* Felichko notes that the signatures were notarized, but the effect of the notary witness is not to "seal" a signature but to formally validate that the signature is that of the person claimed. *See* Del. Code Ann. tit. 29 § 4309. Therefore, based on Delaware law, the assignments are ordinary contracts subject to the three-year statute of limitations and not "specialty contracts" subject to the twenty-year statute of limitations. *See Sunrise*, 2010 WL 975581, at *2; *see also Milford Fertilizer Co. v. Hopkins*, 807 A.2d 580, 583 (Del. Super. 2002) (noting that the recital in the testimonium clause that the note is being signed under seal, together with the presence of the word "SEAL" to the right of the signature was sufficient to establish that the note is under seal).

However, under Delaware law, the limitations period may be tolled under the doctrines of "inherently unknowable," "fraudulent concealment," or equitable tolling. *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007); *Studiengesellschaft Kohle mbH v. Hercules, Inc.*, 748 F. Supp. 247, 252 (D. Del. 1990). Felichko appears to argue that he was defrauded of the consideration for his assignment. (Pl's. Resp. 17-18, ECF No. 32.) While fraudulent conduct would not make the statute of limitations inapplicable as he argues, construing Felichko's allegations broadly and with all inferences in his favor, there may be an argument that the statute should be tolled. If a tolling doctrine applies, the statute of limitations is

tolled until the plaintiff is on inquiry notice of the injury. *See Coleman v. Pricewaterhousecoopers, LLC*, 854 A.2d 838, 842 (Del. Supr. 2004) (citing *Becker v. Hamada, Inc.*, 455 A.2d 353, 356 (Del. 1982)). Felichko's allegations would place him on inquiry notice no earlier than November 3, 2016, when he was told that his association with the Company was being terminated after he'd refused the offer to cash in his options for $200,000. If so, his claims related to the assignments would be timely. This Court decides to allow these claims to survive dismissal at this time noting that Felichko has the burden of proving that such relief is warranted.

### C. Contract Claims – Counts III, IV, and XI

Defendants seek dismissal of Felichko's contract claims (Counts III, IV, and XI) on various grounds:

- Schechter seeks dismissal of Counts III, IV, and XI against him on the basis that he is not alleged to be a party to any agreement. (Defs.' Mot. Mem. at 13-14, ECF No. 28-1.) MacDonald also seeks dismissal under Count IV to the extent it is asserted against him. (Defs.' Mot. Mem. at 13 n.14, ECF No. 28-1.)

- Defendants contend that the claim for breach of the duty of good faith and fair dealing (Count III) should be dismissed because there is no allegation of a specific implied contractual obligation. (*Id.* at 18.)

- Defendants seek dismissal of the claim for bad faith termination (Count XI) because Felichko does not allege that he was an employee of Schechter Tech. (*Id.* at 24.)

Each shall be addressed in turn.

### 1. Schechter is not a party to the Option Agreement

"It is a well-settled principal of contract law that 'only a party to a contract may be sued for breach of that contract.'" *Koloni Reklam, Sanayi, Ticaret LTD/STI v. Viacom, Inc.*,

Civ. No. 16–285–SLR, 2017 WL 726660, at *3 (D. Del., 2017) (quoting *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999)). Felichko argues however, that under circumstances of fraud, contract liability may be imputed to Schechter as a principal of the company under a veil-piercing theory. (Pl's. Resp. 19, ECF No. 32.)

"To state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. Supr. 2003) (citing *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999)). It requires exceptional circumstances to disregard the corporate form, and Felichko has not included allegations in his Complaint that would support piercing Schechter Tech's corporate veil. *See Wallace*, 752 A.2d at 1184 ("Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.")

Accordingly, Count III shall be dismissed against Schechter. Count IV, to the extent it is asserted against Schechter and MacDonald, shall be dismissed. Count XI is discussed below.

## 2. No specific implied contractual obligation (Count III)

The implied covenant of good faith and fair dealing is a "judicial convention designed to protect the spirit of an agreement when, without violating an express term of the agreement, one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain." *Chamison v. HealthTrust, Inc.–Hosp. Co.*, 735 A.2d 912, 920 (Del. Ch. 1999). The implied covenant requires parties to exercise good faith in the performance of

their contract, but it does not override express terms or create new obligations. *Id.* The implied covenant is intended to prevent arbitrary or unreasonable conduct that would have the effect of preventing the other party to the contract from receiving the fruits of the bargain. *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. Supr. 2005); *Griffith v. Energy Independence, LLC*, C.A. NO.: N17C–03–011 AML, 2017 WL 6403509, at *5 (Del. Super. 2017) (citing *Aspen Advisors LLC v. United Artists Theatre Co.*, 843 A.2d 697 (Del. Ch. 2004)). "Only when it is clear from the writing that the contracting parties 'would have agreed to proscribe the act later complained of . . . had they thought to negotiate with respect to that matter' may a party invoke the covenant's protections." *Dunlap*, 878 A.2d at 442 (quoting *Katz v. Oak Industries, Inc.*, 508 A.2d 873, 880 (Del. Ch. 1986)).

"In order to plead successfully a breach of an implied covenant of good faith and fair dealing, the plaintiff must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Southern Track & Pump, Inc. v. Terex Corp.*, 623 F. Supp. 2d 558, 562 (D. Del. 2009) (quoting *Fitzgerald v. Cantor*, No. 16297–NC, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)). "General allegations of bad faith conduct are not sufficient. Rather, the plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract. Consistent with its narrow purpose, the implied covenant is only rarely invoked successfully." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009).

Felichko alleges that Defendants' conduct (including intentional dilution of his options' value, preemptive termination of his association with Schechter Co. and lying to

him about the status of Schechter Co. and his options) deprived him of the benefit of the bargain implied in his Option Agreement. (Compl. ¶¶ 79-81, ECF No. 2.) None of these allegations identify a specific contractual obligation in the Option Agreement nor identify a term that should be implied into the contract. The Option Agreement's terms expressly permitted Schechter Tech to terminate Felichko. (Option Plan ¶ 6.10, ECF No. 2-4.) The Option Agreement's terms also allowed the Manager to make adjustments to prevent the dilution or enlargement of rights under outstanding options but did not expressly require the Manager to prevent dilution. (*Id.* at ¶ 6.8.) A broken promise, by itself, does not constitute bad faith; Felichko must identify a specific contractual obligation that Defendants performed in bad faith. *See Harmon v. State*, C.A. No. 07C–01–003 WLW, 2010 WL 8250826, at *2 (Del. Super. 2010) (citing *Southern Track*, 623 F. Supp. 2d at 563).

Felichko's compares his case to *Cavi v. Evolving Systems, Inc.*, C.A. NO. 15–1211–RGA/MPT, 2017 WL 658470, at *9 (D. Del. 2017), in which the court found the covenant of good faith and fair dealing adequately pled. In *Cavi*, the court was reviewing a employment agreement under which stock options and commissions were to be provided, but actions were taken by the defendant employer to frustrate the purpose of the contract. *Id.* In this case, this Court must look to the Option Agreement itself and its terms. Accordingly, Count III shall be dismissed.

### 3. Bad faith termination

Defendants contend that whether Delaware or Maryland law applies, Felichko's claim for bad faith termination fails as a matter of law because Felichko does not allege that he was ever an employee of Schechter Tech. (Defs.' Mot. Mem. 24, ECF No. 28-1 (citing

*Nikolouzakis v. Exinda Corp.*, C.A. No. 11–1261–LPS–MPT, 2012 WL 3239853, at *11 (D. Del. 2012); *Cogan v. Harford Memorial Hospital*, 843 F. Supp. 1013, 1022 (D. Md. 1994).) Felichko alleges that all contracts were negotiated in Maryland and that he began working as a part-time contracted software engineer in 2002 in Maryland (Compl. ¶¶ 5, 17, ECF No. 2), so for purposes of this dismissal motion, this Court will apply Maryland law. *See Am. Motorists*, 659 A.2d at 1301. No formal employment contract is alleged or provided, but Felichko alleges that he worked part-time on contract on projects and was otherwise employed elsewhere in Maryland. (Compl. ¶¶ 17-19, ECF No 2.) Felichko did not have an employer-employee relationship with Schechter Tech. (*Id.*)

Defendants cite *Cogan*, which states that "there are no cases in Maryland that address the issue of extending to independent contractors the right to sue for abusive or wrongful termination of an 'employment' relationship." 843 F. Supp. at 1022. The *Cogan* court also noted that other state courts "have held that a cause of action for Wrongful discharge arising out of the employment relationship are not available to an independent contractor." *Id.* Felichko provides no authority that recognizes this cause of action in either Delaware or Maryland. Accordingly, Count XI for Bad Faith Termination shall be dismissed.

### D. Tort Claims – Counts VII, VIII, IX, and X

Defendants seek dismissal of the tort claims (Counts VII, VIII, IX, X) on various grounds:

- Defendants contend that the fraud and negligent misrepresentation claims (Counts VIII and IX) should be dismissed because there is no allegation of a false statement. (Defs.' Mot. Mem. at 18, ECF No. 28-1.)

- Defendants contend that the constructive fraud claim (Count VII) should be dismissed because Delaware law does not recognize a fiduciary duty to stock option holders. (*Id.* at 25.)

- Defendants contend that the claim for intentional interference with a prospective economic advantage (Count X) should be dismissed because Felichko does not allege a reasonable expectation of a business opportunity with a third party and because it addresses a past business transaction rather than a future business opportunity. (*Id.* at 22-23.)

Each shall be addressed in turn.

### 1. Fraud and Negligent Misrepresentation (Counts VIII and IX)

As discussed infra, under Section I.A. Personal Jurisdiction Over MacDonald, page 15, this Court accepts that Felichko has adequately pled the elements of a fraud claim with sufficient precision to survive a dismissal motion.

To state a claim for negligent misrepresentation under Maryland law, a plaintiff must show that:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Lloyd v. General Motors Corp.*, 916 A.2d 257, 273 (Md. 2007). "Importantly, a claim of negligent misrepresentation under Maryland law does not contain an essential showing of fraud and thus the heightened pleading requirements of Rule 9(b) do not apply." *Baltimore Cty. v. Cigna Healthcare*, No. 06-1877, 238 F. App'x 914, 921 (4th Cir. June 5, 2007) (citing *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007); *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005)); *see also Malinowski v. The*

*Lichter Group, LLC*, 165 F. Supp. 3d 328, 338 (D. Md. 2016) ((not applying a heightened standard to the plaintiff's negligent misrepresentation claim).

This Court has already determined that Felichko has adequately pled a false statement. Defendants do not argue that Felichko has not adequately pled that Schechter owed him a duty of care, although the tort of negligent misrepresentation requires the existence of a duty of care owed to Felichko from the defendant. *See Weisman v. Connors*, 540 A.2d 783, 793 (Md. 1988). This Court accepts that there are adequate allegations of a relationship between Schechter and Felichko, sufficient to satisfy the duty element of the tort of negligent misrepresentation, and this claim has only been asserted against Schechter. Therefore, both Counts VIII and IX will survive this dismissal motion.

### 2. Constructive Fraud – Count VII

Under Maryland law, to establish constructive fraud, a plaintiff must prove that the defendant "breach[ed] a legal or equitable duty to the plaintiff in a way that tend[s] to deceive others, to violate public or private confidence, or to injure public interests." *Thompson v. UBS Fin. Servs., Inc.*, 115 A.3d 125, 138 (Md. 2015) (citation omitted). The key element here is the breach of a duty:

> A defendant owes an equitable duty to a plaintiff where the parties are in a confidential relationship, a relationship which exists where the defendant has gained the plaintiff's confidence and purports to act or advise with the plaintiff's interest in mind. Accordingly, a plaintiff and a defendant are in a confidential relationship only if the plaintiff depends on the defendant. Although a confidential relationship may exist in a business relationship, as when there is a relationship independent of the business relationship, when businesses enter a typical arm's length transaction to further their own separate business objectives no such relationship exists.

*Auto USA, Inc. v. DHL Express (USA), Inc.*, Civil Action No. CCB–17–1312, 2018 WL 1046302, at *4 (D. Md. 2018) (citations and alterations in original omitted).

Since constructive fraud, unlike actual fraud, depends on the existence of a fiduciary relationship of some kind, this must be alleged, and Felichko has not alleged any fiduciary relationship with any of the Defendants. Accordingly, Count VII will be dismissed.

### 3. Intentional Interference (Count X)

The parties both cite the elements of a claim for Intentional Interference with Prospective Economic Advantage under Delaware law as: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages." (Defs.' Mot. Mem. 22-23, ECF No. 28-1, quoting *Kuroda*, 971 A.2d at 886-87 (Del. Ch. 2009); Pl.'s Resp. 11, ECF No. 32.) Defendants note that "[w]hile Delaware law applies to Count X the cause of action and analysis under Maryland law is the same." (Defs.' Mot. Mem. 23 n. 23, ECF No. 28-1 (citing *180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635 (D. Md. 2009).) This cause of action, however, is a tort claim and is properly reviewed under Maryland law. *See infra*, Choice of Law on page 22.

In Maryland, the five elements of intentional interference with contract are:

> 1) existence of a contract between plaintiff and a third party;
> 2) defendant's knowledge of that contract;
> 3) defendant's intentional interference with that contract;
> 4) breach of that contract by the third party;
> 5) resulting damages to the plaintiff.

*Gordini*, 602 F. Supp. 2d at 638 (citing *Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons*, 358 F. Supp. 2d 475, 479 (D. Md. 2005)).

Felichko argues that he has adequately pled the elements by alleging "that he held valid stock options and that Defendants attempted to intentionally terminate him without cause, thereby causing drastic financial harm to him and personally benefiting the Defendants." (Pl.'s Resp. 11-12, ECF No. 32.) However, the first element requires that he plead the existence of a contract between himself and a third party. *Gordini*, 602 F. Supp. 2d at 638. There is no allegation of such a contract.

Accordingly, Count X shall be dismissed.

## CONCLUSION

For the foregoing reasons:

1. Defendant Digi International Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (ECF No. 26) is GRANTED. Digi International Inc. is DISMISSED for lack of personal jurisdiction. Count XII - Injunction is DISMISSED.

2. Defendants Harry Schechter, Jeremy MacDonald and Schechter Tech LLC's Motion to Dismiss (ECF No. 28) is DENIED IN PART and GRANTED IN PART.

   a. This Court shall exercise jurisdiction over Jeremy MacDonald.

   b. Count III – Breach of Contract – Covenants of Good Faith and Fair Dealing is DISMISSED.

   c. Count IV – Breach of Contract – Stock Options, to the extent that it is being asserted against Schechter and MacDonald, is DISMISSED.

   d. Count VII – Constructive Fraud is DISMISSED.

   e. Count X – Intentional Interference with Prospective Economic Advantage is DISMISSED.

   f. Count XI – Bad Faith Termination is DISMISSED.

3.    The following claims remain:

| Count | Asserted Against |
|---|---|
| Count I – Unjust Enrichment – Unit Options | Schechter, MacDonald, Schechter Tech |
| Count II – Unjust Enrichment – Intellectual Property | Schechter, MacDonald, Schechter Tech |
| Count IV – Breach of Contract – Stock Options | Schechter Tech |
| Count V – Declaratory Judgment – Ownership of Patents | Schechter, MacDonald, Schechter Tech |
| Count VI – Declaratory Judgment – Ownership of Units | Schechter, MacDonald, Schechter Tech |
| Count VIII – Fraud | Schechter, MacDonald, Schechter Tech |
| Count IX – Negligent Misrepresentation | Schechter |

A separate order follows.

Dated:  March 22, 2019.

_____
Richard D. Bennett
United States District Judge